**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 23-02229-TUC-CKJ (MAA) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Mitchell Robert Cordova, | ) | |
| Defendant. | ) | |

The District Court referred this case to the Magistrate Judge for a hearing on the Defendant Mitchell Robert Cordova's motion to suppress (Doc. 37). The government filed a Response (Doc. 38) and Defendant filed a Reply (Doc. 39). An evidentiary hearing was held on February 12, 2025. Doc. 47. Defendant was present with his counsel. The government called Cochise County Sheriff's Deputy Austin Shaw to testify. Government's exhibits 1-14 and Defendant's exhibits 15-18 were entered into evidence without objection. Defendant did not call any witnesses. The government filed a supplemental brief on February 24, 2025 (Doc. 54) and Defendant filed a response on March 7, 2025 (Doc. 57).

Defendant is charged by indictment with one count of Conspiracy to Transport Illegal Aliens for Profit in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(I) and two counts of Transportation of Illegal Aliens for Profit in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(I). Doc. 15. Defendant argues his Fourth Amendment rights were violated on November 17, 2023, when his vehicle was stopped for having a red license plate light and his temporary registration tag not being clearly visible.

1  Doc. 37.  According to the government, following the stop, illegal aliens were found hiding
2  inside the vehicle.  Defendant moves to suppress all evidence from the stop.  Doc. 37.
3        The court concludes the traffic stop was supported by reasonable suspicion.  The
4  motion to suppress should be denied.
5  **I.      FACTUAL RECORD.**
6        Austin Shaw is a deputy with the Cochise County Sheriff's Office.  Hearing
7  Transcript ("HT"), Doc. 52, at p. 10. Shaw has been working in law enforcement for almost
8  five years.  HT at 11.  He explained he is assigned to the "criminal interdiction team where
9  we specialize in border related crimes."  *Id* at 12.
10       Shaw also investigates vehicle equipment violations.  HT at 14.  Based on his training
11 and experience, he believes that the vehicle license plate area must be illuminated by a white
12 light so the license plate is visible for 50 feet, and that the license plate must be
13 "unobstructed."  *Id.* at 14-15.  According to Shaw, a non-operational lamp or a non-white
14 lamp would warrant a stop.  *Id.* at 15.
15       Shaw believes the requirements for a temporary registration tag are the same as for
16 a regular registration.  HT at 16-17.  "It has to be easily viewable from 50 feet away and in
17 an . . . area on the vehicle that isn't obstructed by anything."  *Id.* at 17.
18       Individuals involved in human smuggling often use temporary tags.  HT at 22-23.
19 Temporary tags are easily obscured and make it harder for law enforcement to identify the
20 vehicles.  *Id.* at 23.
21       Shaw was on duty on the night of November 17, 2023, "conducting human smuggling
22 border related traffic enforcement. . . ."  HT at 24.  He was parked in a marked vehicle at the
23 junction of Highway 80, leading north to Tombstone, and Highway 90, leading west to Sierra
24 Vista.  *Id.* at 19-20, 25-26.  It was "dark or at least dusk to the point where headlights and
25 lights were needed."  *Id.* at 26.
26       Shaw observed a black 2004 Chevrolet Tahoe traveling northbound on Highway 80.
27 HT at 28.  It had a red license plate light and what he thought appeared to be a temporary tag.
28 *Id.* at 28.  Shaw began following the vehicle.  *Id.*

1    He approached to about 30 feet behind the Tahoe. HT at 28-29. Shaw testified he
2 was unable to read the temporary registration tag, which was placed in the license plate area
3 of the bumper. *Id.* at 29. He testified, "It appeared to have some sort of cover over it,
4 creating some sort of light diffusion on it." *Id.* at 29. He explained that the cover deflected
5 the light coming from the red lamps creating "basically a film over it, which I wasn't able
6 to read anything behind it." *Id.* Shaw testified he was unable to clearly see the temporary
7 tag and could not run a check of the temporary registration, his usual practice. *Id.* at 32.

8    Shaw activated his emergency overhead lights and conducted the traffic stop. HT at
9 32. He activated his body-worn camera. *Id.* at 32-33. He confirmed the temporary tag was
10 behind a plastic cover. *Id.* at 34. He noticed "three males lying flat in the rear cargo area of
11 the . . . Tahoe." *Id.* "And one of them had something over him." *Id.* He contacted the driver
12 who he identified as Mitchell Cordova. *Id* Shaw used his radio to request assistance. *Id.* at
13 37. He gave Cordova the *Miranda* warnings, and Cordova invoked his rights. *Id.* at 38.

14    Government's Exhibit 7 is a photo showing the rear of the Tahoe after the vehicle was
15 turned off. HT at 40. According to Shaw, the photograph at Exhibit 13 better represents the
16 red lamps. *Id.* at 40-41. Shaw testified he stopped the Tahoe because it had red lamps
17 illuminating the licence plate area and because he was unable to read the temporary license
18 tag. *Id.* at 41-42.

19    Shaw testified he did not take any video or photographs of the Tahoe before the traffic
20 stop. HT at 59. He testified that, when he was driving 30 feet behind the Tahoe, he could
21 not see the tag because of the red lights and the "plate obstruction." *Id.* at 61.

22    Shaw did not cite the driver for having his temporary tag illuminated by a red light or
23 for having an obstruction in front of the tag. HT at 73-74. Shaw testified he cited the driver
24 for driving on a restricted license because it was a more serious charge. *Id.* at 73-74.

25 **II.   DISCUSSION.**

26    "The Fourth Amendment prohibits unreasonable searches and seizures by the
27 Government, and its protections extend to brief investigatory stops of persons or vehicles that
28 fall short of traditional arrest." *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005)

(punctuation modified). "Such investigatory stops are justified by 'reasonable suspicion' that criminal activity may be afoot." *Id*. "The touchstone of the Fourth Amendment is reasonableness." *Id*. For example, if the officer observes a violation of the traffic code, the stop is reasonable. *Id*. at 716.

In this case, Deputy Shaw stopped the defendant's vehicle because it had a red light illuminating the temporary registration tag that had been placed in the license plate area in the center of the bumper. Shaw testified that Title 28 of the Arizona Revised Statutes lists the standard motor vehicle equipment requirements and specifies that each vehicle must have a white light illuminating the license plate area. HT at 14-17. He concluded that the Tahoe was in violation of the statute. The court agrees.

The pertinent statute, A.R.S. § 28-925(C), states that "[e]ither a tail lamp or a separate lamp shall be constructed and placed in a manner that illuminates with a white light the rear license plate and renders it clearly legible from a distance of fifty feet to the rear." The statue appears in the Arizona Revised Statutes under Article 16, Equipment. It describes equipment that all vehicles must have, specifically the kind of lights that must illuminate the rear license plate area. The Tahoe, however, did not have a white light illuminating the rear license plate area where the temporary tag was placed. It was in violation of the statute, and Shaw's traffic stop was reasonable. *See also* A.R.S. § 28-931(C)(2) ("The light illuminating the license plate . . . shall be white.").

Defendant argues the requirements of the statute are inapplicable because the statute specifies how a *license plate* should be illuminated and he did not have a license plate; he had a temporary registration tag. Doc. 37, pp. 6-7. He asserts the statute says nothing about how temporary tags should be lit. The court disagrees with this reading of the statute.

The statute specifies the proper equipment that must be on all vehicles regardless whether it has a proper license plate or a temporary registration tag. *See State v. Henrichs*, 2020 WL 6948928, at *3 (Ariz. Ct. App. Nov. 25, 2020) (unpublished). All vehicles must have a white light illuminating "the license plate area." *Id*. It does not matter whether a proper license plate or a temporary tag has been placed there. *Id.* at *3 ("Henrichs was

1 therefore in violation of the statute because his car lacked a light for the rear license plate,
2 even if he had no such plate.").

3      In the alternative, the court finds that if Shaw was mistaken about the construction of
4 the statute, his mistake was objectively reasonable. *See Heien v. North Carolina*, 574 U.S.
5 54, 60, 66, 135 S. Ct. 530, 536, 539 (2014) ("The question here is whether reasonable
6 suspicion can rest on a mistaken understanding of the scope of a legal prohibition. We hold
7 that it can."). The statute appears directed to make it easier to read the license after dark.
8 And a temporary tag is also hard to see in the dark, perhaps even more so because it may lack
9 the reflective surface of a license plate. *See* Doc. 37, p. 6. It makes sense that the statute
10 would require a temporary tag that was placed in the license plate area to be illuminated in
11 the same way as a license plate. In other words, it seems irrational to require a license plate
12 to be illuminated by a white light but allow a temporary tag placed in the licence plate area
13 to be illuminated by a red light. It is reasonable to believe that the statute treats like things
14 alike. Shaw's interpretation of the statute properly considers the statue's context, subject
15 matter, spirit and purpose. *See Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668,
16 672 (1994) (If "the statute's text allows for more than one rational interpretation," the court
17 may "consider the statute's context; its language, subject matter, and historical background;
18 its effects and consequences; and its spirit and purpose."). Assuming for the sake of
19 argument that Shaw misinterpreted the statute, his mistake was objectively reasonable, and
20 the traffic stop was still based on reasonable suspicion. *See, e.g., Heien v. North Carolina*,
21 574 U.S. 54, 67, 135 S. Ct. 530, 540 (2014) (The officer's mistaken belief that a vehicle must
22 have *two* working brake lights was reasonable where "the North Carolina statute at issue
23 refers to 'a stop lamp,' suggesting the need for only a single working brake light, [but] it also
24 provides that 'the stop lamp may be incorporated into a unit with one or more other rear
25 lamps.'") (punctuation modified). The court further finds that the stop was reasonable
26 because the temporary tag was not clearly visible.

27      The pertinent statute, A.R.S. § 28-2156(D), states that "[t]he owner or operator of the
28 vehicle shall display the temporary general use registration so that it is clearly visible from

outside the vehicle." Shaw testified that he drove behind the Tahoe and approached to within 30 feet, but he was unable to read the temporary tag because the tag was covered by a plastic covering and the red light shining on the covering created a kind of "film" that prevented him from reading the tag. HT at 28-29. He was therefore unable to run a records check on the registration prior to the stop, which is his usual practice. *Id*. at 32.

The Tahoe's temporary tag was not "clearly visible from outside the vehicle" as required by A.R.S. § 28-2156(D). The stop was reasonable. *See, e.g., State v. Nevarez*, 235 Ariz. 129, 133, 329 P.3d 233, 237 (Ct. App. 2014) (Traffic stop was supported by reasonable suspicion where "the temporary registration posted on Nevarez's car was not initially visible to Officer Wilson" and "it was not until after he had exited his vehicle, walked closer to Nevarez's vehicle, and had lights shining towards the rear of the vehicle that he saw the temporary registration.") (punctuation modified).

Defendant argues Shaw's testimony is unsupported by "objective evidence" and is therefore unworthy of belief. Doc. 57, p. 4. He also points to Exhibits 15, 16, 17 and 18, which are photographs of the temporary tag taken with and without the plastic covering. Doc. 57, p. 4 (citing HT at 64:7-68:25). These photographs were taken after the arrest and attempted to re-create the appearance of the temporary tag with the plastic cover as it originally appeared to Shaw. The plastic cover had apparently been removed from the vehicle, but it was eventually found, and "[t]hey put it in front of the license." HT at 65. "They didn't exactly attach it, but they put it in front of the temporary tags. . . ." *Id*. The court agrees that the temporary tag is clearly visible in the photographs. The court does not agree that these photographs prove that Shaw was wrong when he reported that the tag was not clearly visible on the night of November 17, 2023.

The visibility of the temporary tag on that night would have depended on a number of things such as the position of the red lights shining from the side, the angle of the plastic cover, the angle of the headlights shining on the tag and whether dust or other material was present on or underneath the cover. It is by no means certain that the conditions on the night

1    of November 17, 2023, were the same as the conditions when the photographs were taken.
2    The court therefore does not find the photographs to be particularly relevant.

3        Shaw did not take any photos of the Tahoe when he was driving 30 feet behind, so
4    there is no corroborating evidence supporting his testimony. Nevertheless, the court finds
5    Shaw to be a credible witness based on his demeanor and the content of his testimony. For
6    example, Shaw testified he could not see the temporary tag clearly and therefore was unable
7    to conduct a records check on the registration prior to the stop, which is his usual practice.
8    HT at 32. A records check provides information valuable for the investigation and also for
9    officer safety. It seems unlikely Shaw would forgo a records check and pass up a chance to
10   learn information important for officer safety if he really could see the temporary tag clearly.

11       Defendant further asserts that Shaw gave "contradictory testimony" about his ability
12   to see the temporary tag clearly. Doc. 57, p. 4. For example, Shaw stated that the Tahoe had
13   temporary tags rather than a proper license plate so he must have seen *something* behind the
14   plastic cover. Moreover, at one point during cross-examination, Shaw stated "he could not
15   'remember one way or the other' whether he saw the numbers on the Tag." Doc. 57, p. 4
16   (citing HT at 62:9-19) Shaw made this statement, however, when he was asked what he saw
17   after the Tahoe stopped and he parked his car five to ten feet behind it. Doc. 52, p. 62. At
18   this point, he was much closer to the Tahoe than he had been when he was driving behind
19   it, and the lighting was different. The court does not agree that Shaw's testimony was so
20   "contradictory" that his testimony that he could not see the temporary tag clearly is unworthy
21   of belief. *See United States v. Matlock*, 415 U.S. 164, 177, n. 14, 94 S. Ct. 988, 996, n. 14
22   (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater
23   burden than proof by a preponderance of the evidence.").

24   **III.   RECOMMENDATION.**

25       In view of the foregoing, it is recommended that, after its independent review of the
26   record, the District Court **DENY** the motion to suppress (Doc. 37).

27
28

1  Each counsel may serve and file written objections within 14 days. If objections are
2  not timely filed, the party's right to de novo review may be waived. Response briefs are
3  permitted but reply briefs are not permitted unless approved by the District Court.
4  The Clerk of the Court is directed to send a copy of this Report and Recommendation
5  to all parties.

7  DATED this 27th day of March, 2025.

_____
Honorable Michael A. Ambri
United States Magistrate Judge