**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Mitchell Robert Cordova,<br><br>　　　　Defendant. | No. CR 23-2229-TUC-CKJ (MAA)<br><br>**ORDER** |

　　On March 27, 2025, Magistrate Judge Michael A. Ambri issued a Report and Recommendation (Doc. 58) in which he recommended that the Motion to Suppress (Doc. 37) filed by Mitchell Robert Cordova ("Cordova") be denied. Cordova has filed Objection to the Report and Recommendation (Doc. 61) and the government has filed a response (Doc. 62).

　　The Court has reviewed the Motion to Suppress (Doc. 37), the response (Doc. 38), and the reply (Doc. 39), as well as the supplemental briefs (Docs. 54, 57.  The Court has also reviewed the Report and Recommendation ("R & R") (Doc. 58), the exhibits, the Objections (Doc. 61), the response (Doc. 62), and the transcript of the evidentiary hearing (Doc. 52). The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections – the Court need not review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, the Court  must "determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with

instruction." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

*Report and Recommendation – Factual Background*

Although Cordova asserts that only the facts related to the stop are relevant to the analysis, Cordova does not object to the facts as summarized by the magistrate judge. Similarly, the government does not object to those facts. The Court, therefore, adopts the factual findings in the R & R.

*Objections to the Report and Recommendation*

Cordova objects to the magistrate judge's conclusions there was a traffic violation based on a non-compliant light, the mistake of Cochise County Sheriff's Deputy Austin Shaw ("the deputy" or "Shaw") was objectively reasonable, and reasonable suspicion existed to conduct a traffic stop because a license plate/tag was not clearly visible.

*Traffic Violation Based on a Non-Compliant Light*

Cordova argues the magistrate judge erred in concluding there was a traffic violation based on a non-compliant light. Cordova points to the magistrate judge's referring to the discussion of A.R.S. § 28-295(C) regarding "the kinds of lights that must illuminate the rear license plate area." Objections (Doc. 61, p. 2), *citing* R & R (Doc. 58, p. 4). The statute requires that "[e]ither a tail lamp or a separate lamp shall be constructed and placed in a manner that illuminates with a white light the rear license plate and renders it clearly legible . . . " A.R.S. § 28-295(C). Similarly, § 28-931(C)(2) states "[t]he light illuminating the license plate or the light emitted by a backup lamp shall be white." In other words, the statutes refer to the license plate rather than the license plate area.

1 | Cordova asserts the plain meaning of the statutes "confirms these statutes require all
2 | Arizona vehicles to be equipped with a white light for a license plate (object)— not the

Cordova asserts the plain meaning of the statutes "confirms these statutes require all Arizona vehicles to be equipped with a white light for a license plate (object)— not the license plate area (space)." Objections (Doc. 61, p. 3). However, the Court finds a plain reading of the statute requires vehicles must be equipped with white light for a license plate. The purpose of the statute is to set forth required equipment. That a vehicle does not have a license plate does not obviate the need for a vehicle to be equipped with the referenced white light. The statute addresses the equipment, not just if a vehicle is in compliance if other circumstances are met. As pointed out by the government, "State law prohibits a driver from operating a vehicle that "[d]oes not contain those parts or is not at all times equipped with lamps and other equipment in proper condition and adjustment as required in this article[.]" Response (Doc. 62, p. 5), *citing* A.R.S. § 28–921(A)(1)[.]"

Moreover, the reading proposed by Cordova must be avoided, or else the results would be absurd:

> It is worth noting, even if the plain language of the statute was clear and unambiguous and did not engender questions about the coherence and consistency of all its provisions, courts are entitled to look beyond the plain meaning of a statute in the rare instance where a literal application "would lead to absurd results." *Reno v. National Transp. Safety Bd.*, 45 F.3d 1375, 1379 (9th Cir.1995); *see also Haggar Co. v. Helvering*, 308 U.S. 389, 394, 60 S.Ct. 337, 84 L.Ed. 340 (1940) ("All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose."); [2A Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 45:12 (7th ed.2007) ("[I]t is fundamental ... that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question.").

*Quade ex rel. Quade v. Barnhart*, 570 F. Supp. 2d 1164, 1171 (D. Ariz. 2008). Cordova's interpretation would result in different equipment requirements if a permanent license plate was not placed on a vehicle. This would defeat the primary purpose of requiring a visible license plate, which is to "to allow law enforcement to identify the vehicle." *State v. Blakley*, 243 P.3d 628, 632 (Ariz. App. 2010), *citing United States v. Humphries*, 636 F.2d 1172, 1178 (9th Cir.1980) ("a license plate [is] something designed specifically for identification purposes").

*"Mistake" of the Deputy*

Cordova argues the magistrate judge erred in concluding that, even if Shaw made a mistake, it was objectively reasonable. The Court has concluded the deputy did not make a mistake. Nonetheless, the magistrate judge stated:

> In the alternative, the court finds that if Shaw was mistaken about the construction of the statute, his mistake was objectively reasonable. *See Heien v. North Carolina*, 574 U.S. 54, 60, 66, 135 S. Ct. 530, 536, 539 (2014) ("The question here is whether reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition. We hold that it can."). The statute appears directed to make it easier to read the license after dark. And a temporary tag is also hard to see in the dark, perhaps even more so because it may lack the reflective surface of a license plate. See Doc. 37, p. 6. It makes sense that the statute would require a temporary tag that was placed in the license plate area to be illuminated in the same way as a license plate. In other words, it seems irrational to require a license plate to be illuminated by a white light but allow a temporary tag placed in the licence plate area to be illuminated by a red light. It is reasonable to believe that the statute treats like things alike. Shaw's interpretation of the statute properly considers the statute's context, subject matter, spirit and purpose. *See Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) (If "the statute's text allows for more than one rational interpretation," the court may "consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose."). Assuming for the sake of argument that Shaw misinterpreted the statute, his mistake was objectively reasonable, and the traffic stop was still based on reasonable suspicion. *See, e.g., Heien v. North Carolina*, 574 U.S. 54, 67, 135 S. Ct. 530, 540 (2014) (The officer's mistaken belief that a vehicle must have two working brake lights was reasonable where "the North Carolina statute at issue refers to 'a stop lamp,' suggesting the need for only a single working brake light, [but] it also provides that 'the stop lamp may be incorporated into a unit with one or more other rear lamps.'") (punctuation modified). The court further finds that the stop was reasonable because the temporary tag was not clearly visible.

R & R (Doc. 58, p. 5).

Further, Shaw testified that, in his training and experience, the requirements to illuminate "the license plate area [be complied with], it has to be a white light emitting onto the license plate. It has to be visible from a -- a view of 50 feet on -- on the roadway, as well as an unobstructed license plate that I -- again, that I can read legibly from 50 feet away." Feb. 12, 2025, Transcript ("TR") (Doc. 52, pp. 14-15).

The Court agrees with the analysis and conclusion of the magistrate judge. It is not reasonable to require a license plate to be illuminated by a white light but allow a temporary tag to be illuminated by a red light. Nor is it reasonable to only enforce the statutorily required equipment if a license plate has been affixed to a vehicle. If Shaw made a mistake

- 4 -

about the statutory requirements, in light of the plain reading of the statutes and Shaw's training and experience, such mistake was objectively reasonable.

*Visibility of Temporary Tag*

Cordova asserts the photographs taken of the vehicle, in which the temporary tag is clearly visible, R & R (Doc. 58, p. 6), disputes Shaw's testimony that he was not able to clearly see the temporary tag. Shaw testified Cordova's vehicle had "red license plate lights on the vehicle and what [he] thought to be a temporary tag, but [he] wasn't too – too sure at that time[,]" i.e., when he first observed the vehicle. TR (Doc. 52, p. 28). Shaw further testified he was not able to read the temporary tag because it "appeared to have some sort of cover over it, creating some sort of light diffusion on it" as he followed behind the vehicle. (*Id*. at 29). Shaw also testified:

> Q (AUSA). But from during the time you first spotted the -- spotted the Tahoe --
>
> A (Shaw). Uh-huh.
>
> Q. -- up until right before you initiated the traffic stop --
>
> A. Uh-huh.
>
> Q. -- were you able to clearly see the temporary tag?
>
> A. No, I was not.
>
> Q. And because you were unable to see the temporary tag, were you able to run a check of the temporary registration?
>
> A. I was not.
>
> Q. Had you been able to see the temporary registration tag as you followed the Tahoe, would it have been your habit and practice to run the tag before initiating a stop?
>
> A. Yes.
>
> Q. And do you recall doing that in this case?
>
> A. After I had already conducted the stop.

TR (*Id*. at 32). In other words, Shaw testified he was not able to see a clearly visible temporary tag in violation of A.R.S. § 28-2156(D).

- 5 -

Cordova appears to be implicitly objecting to the magistrate judge's determination Shaw was "a credible witness based on his demeanor and the content of his testimony." R & R (Doc. 58, p. 7). However, the Court agrees with the magistrate judge that Shaw was a credible witness. Shaw also testified he did not conduct a records check until after Cordova had been detained and Shaw believed it was after an additional unit arrived.[1] Shaw further testified subsequent photographs, in which the temporary tag can be seen, were taken while the red light was not on. TR (Doc. 52, pp. 40, 59).[2] Shaw testified it was his habit and practice conduct a records check on a tag prior to initiating a stop, but was unable to do so in this case because he could not clearly see the temporary tag. To any extent Shaw's testimony was contradictory, it was not such to find his testimony that he could not see the temporary tag clearly as incredible. Rather, as stated by the magistrate judge, "It seems unlikely Shaw would forgo a records check and pass up a chance to learn information important for officer safety if he really could see the temporary tag clearly." R & R (Doc. 58, p. 7); *see also Arizona v. Johnson*, 555 U.S. 323, 330 (2009), *quoting Michigan v. Long*, 463 U.S. 1032, 1047 (1983) (Supreme Court has recognized that traffic stops are "especially fraught with danger to police officers.").

The Court finds Shaw had reasonable suspicion of equipment violations to initiate the traffic stop. Cordova's Motion to Suppress will be denied.

Accordingly, after an independent review, IT IS ORDERED:

1. The Objections to Report and Recommendation (Doc. 61) are OVERRULED and the Report and Recommendation (Doc. 58) is ADOPTED.

. . . . .

---

[1] Shaw learned Cordova did not possess a current Arizona driver's license.

[2] Some of the photographs were stills from Shaw's body camera, while others were taken during a vehicle inspection more than one year after the traffic stop. *See* TR (*Id*. at 38) (Exhibit 13 "looks like [] a still of my body-worn camera."); TR (*Id*. at 64) (vehicle inspection occurred on January 14, 2025).

1      2.    The Motion to Suppress for Lack of Reasonable Suspicion to Make Traffic
2  Stop (Doc. 37) is DENIED.
3      DATED this 16th day of May, 2025.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge